[No. 8171. Department One. July 12, 1909.]

THE STATE OF WASHINGTON, *on the Relation of W. S. Bennett et al., Plaintiff*, v. EDWARD W. TAYLOR *et al., Respondents.*[1]

PROHIBITION—JURISDICTION—EFFECT OF STIPULATION. Under Const., art. 4, § 4, and Bal. Code, § 5769, the supreme court has power to issue a writ of prohibition only to restrain the exercise of an unauthorized judicial or quasi judicial act, notwithstanding a stipulation of the parties to the application limiting the inquiry to the constitutionality of a specified statute.

SAME—GROUNDS—NONJUDICIAL ACT OF SUPERIOR JUDGE—APPOINTMENT OF WATER COMMISSIONER. Laws 1907, p. 285, § 1, authorizing the superior court, upon an ex parte application of the owner or manager of an irrigation reservoir for the storage of waters, to appoint a water commissioner to control and regulate the head gates in accordance with court decrees or the legal rights of interested owners, prescribes only ministerial or administrative duties, and not judicial or quasi judicial duties, and has no relation to judicial proceedings, where removal was the only power that the court could exercise over him; hence the supreme court has no jurisdiction to prevent the appointment by writ of prohibition.

Application for a writ of prohibition filed in the supreme court July 6, 1909, to prevent the appointment of a water

[1]Reported in 102 Pac. 1029.

commissioner by the superior court of Okanogan county, Taylor, J. Writ denied.

*P. D. Smith* and *E. K. Pendergast*, for relators.

*Ralph B. Williamson*, for respondent.

Gose, J.—On the 5th day of June, 1909, one Fred Bonstedt, as manager in charge of the Okanogan Irrigation Project of the United States, filed a notice in the superior court of Okanogan county, stating that his principal, the United States, had constructed a reservoir for the storage of the water of Salmon creek, in Okanogan county, for the purpose of irrigating a large body of land, and that it desired to use the bed of Salmon creek for the purpose of carrying the water from the reservoir to the place where it would be used. The notice further stated that, on June 7, following, he would, on behalf of his principal, apply to the court for the appointment of a commissioner to control, regulate, distribute, and measure the water.

The relators, taxpayers, and owners of a part of the natural flow of the water of Salmon creek, have applied to this court for an alternative writ of prohibition against the respondent, as judge of the superior court and court commissioner respectively, and have alleged that the respondents would appoint a commissioner as prayed for unless prohibited by this court. The hearing on the notice for the appointment of a commissioner was continued until July 16. The respondent Woodbeck stipulated that the facts alleged in the petition for the writ are true, and that he consented to this court limiting its inquiry to the single question of the constitutionality of the act under which the appointment of the water commissioner is sought. Respondent Taylor demurred to the petition for the writ, on two grounds; (1) that the court has no jurisdiction over the subject-matter of the cause, as the act sought to be prohibited is ministerial and administrative and not judicial; (2) that the petition

does not state facts sufficient to warrant the issuance of any extraordinary writ.

Notwithstanding the stipulation of one of the respondents, our first duty is to inquire as to our power to grant the writ. The only office of the writ of prohibition, under art. 4, § 4, of the constitution, and the code (Bal. Code, § 5769; P. C. § 1422) is to restrain the exercise of an unauthorized judicial or *quasi* judicial act. *Winsor v. Bridges*, 24 Wash. 540, 64 Pac. 780; *State ex rel. Pelton v. Ross*, 39 Wash. 399, 81 Pac. 865.

It therefore becomes pertinent to inquire whether the power conferred upon the superior court is a judicial one. The questions involved necessitate a consideration of the act under the terms of which the appointment of a water commissioner was requested. It is urged by the respondents that the power to make the appointment is contained in Laws 1907, page 285, chap. 144. Section 1 of the act is as follows:

"That whenever the owner, manager or lessee of a reservoir, constructed for the storage of water to be used for beneficial purposes, shall desire to use the bed of any stream, or other natural water course, for the purpose of carrying stored, or impounded water, from the reservoir to the user thereof, he shall, in writing, notify the superior court of any county within which said water is stored, carried or used, giving the date when it is proposed to discharge water from such reservoir, and the names of all persons and ditches entitled to its use. The court may then upon a proper showing as to the necessity therefor, appoint a commissioner with qualifications as hereinafter stated, whose duty it shall be to so close, regulate or adjust the head gates of the several ditches taking water from such stream or natural water course, that no more water will flow into said ditch than it is entitled to receive from the water stored in the reservoir or from the unregulated flow of the streams or from both, as determined by decrees of court or as shown by evidences of right properly recorded or by agreement between the parties in interest made with due regard to the legal rights of all, and any person who may be injured by the action of

said commissioner, or by his failure to act as herein pro-
vided, may resort to any court of competent jurisdiction for
such relief as he may be entitled to."

Section 4 provides:

"Said commissioner may, with the consent of the superior
court appointing him, have power to employ and appoint as-
sistants to aid him in the discharge of his duties whenever
necessary. . . ."

The relators assert that the act is violative of § 5, art. 11,
§§ 3 and 16, art. 1, of our constitution, and of the four-
teenth amendment of the Federal constitution. The act un-
der consideration does not require that any notice shall be
given preceding the appointment of a commissioner. The
only conditions precedent to the appointments are, (1) that
the court shall be notified in writing that the owner, mana-
ger, or lessee of a reservoir constructed for the storage of
water to be applied to a beneficial use, desires to use the bed of
a stream for the purpose of carrying impounded water from
the reservoir to the place of use; (2) the court may, upon
the proper showing of necessity, appoint a commissioner pos-
sessing theoretical and practical knowledge of the science of
hydraulics. The proceeding is purely an *ex parte* one and
bears no relation to a judicial inquiry. The relators state
that "the view of the superior court that this is a judicial
proceeding is not justified by the wording of the act." This
view is concurred in by the respondent Taylor, and our own
investigation has led to a like conclusion. The fact that the
relators may have been led into making this statement in the
haste of the preparation of their application for a writ has
led us to make an independent investigation of the law per-
taining to the capacity in which the superior court is called
upon to act in the appointment of a commissioner.

In *Supervisors of Election*, 114 Mass. 247, 19 Am. Rep.
341, the court was considering the validity of a statute vest-
ing the supreme judicial court with power, with or without
notice, to appoint supervisors of election. Speaking to the

character of the power exercised, at page 251, the court,
through Mr. Chief Justice Gray, said:

"These supervisors, although entrusted with certain dis-
cretion in the performance of their duties, are strictly execu-
tive officers. They make no report or return to the court or
to any judge thereof. Their duties relate to no judicial
suit or proceeding, but solely to the exercise by the citizens
of political rights and privileges. We are unanimously of
the opinion that the power of appointing such officers cannot
be conferred upon the justice of this court without violating
the constitution of the commonwealth. We cannot exercise
this power as judges, because it is not a judicial function."

In *Board of Commissioners of Jackson County v. State,*
147 Ind. 476, 46 N. E. 908, the court was considering the
validity of an act relating to the removal of a county seat.
The act provided that a site for a court house and jail,
together with the plans and specifications for such court
house and jail, should be submitted to the judge of the cir-
cuit court, to be approved by him if he found the same sat-
isfactory, such approval to be shown by an entry in the
records of the circuit court either in term time or vacation.
Speaking to the effect of this provision, at page 492, it is
said:

"It is true that these provisions designate certain duties
which the judge of the circuit court is authorized to perform,
which partake more of a ministerial than a judicial nature."

In *McCall v. Calhoun,* 146 Mich. 319, 109 N. W. 601, the
court had under consideration the validity of an act which
provided that the place for holding court and the location
of the jail, together with the sufficiency of the vault and safe
to be used, should be inspected and approved in writing by
the judge of the court or the prosecuting attorney of the
county. Speaking to the question of the capacity in which
the judge acted in the execution of this duty, at page 604,
it is said:

"The authority of inspection and approval given to the
circuit judge was not legislative, but while it was, in its na-

ture, more ministerial than judicial, it was such a power as could be granted to and exercised by him."

In *Williamson v. Mingo County Court*, 56 W. Va. 38, 48 S. E. 835, it was held that the appointment of commissioners of election by the county court is not a judicial or *quasi* judicial act. The view that the power exercised under the act is not a judicial one is supported by the reasoning in *State v. George*, 22 Ore. 142, 29 Pac. 356, 29 Am. St. 586. We find numerous powers conferred upon superior court judges by our statute, which are in no sense judicial. The code (Bal. Code, § 4469; P. C. § 6263), empowers superior judges to solemnize marriages. They also have the power to take acknowledgments (Bal. Code, § 4702; P. C. § 4300), and to certify the oath of the county auditor taken by him as a member of the board of canvassers of election (Bal. Code, § 1417; P. C. § 4842).

If the power invoked bore any relation to any action or proceeding of the court where judicial functions were exer-. cised, a different question would be presented. If the act is within the constitutional powers of the legislature (a question which we do not decide), it could have named some person as its agent to execute the terms of the law, or it could have named the board of county commissioners or some private individual to make the appointment. The act provides that the commissioner shall report both to the board of county commissioners and to the court appointing him. He is paid, however, by the board of commissioners. The single power which the court exercises over him is that of removal. Neither the court nor the judge thereof is given any supervisory power. The water commissioner is in no sense an officer of the court, but is rather the agent of the users of the water. Whether the exercise of the appointing power under the act is administrative or ministerial is not necessary to be. decided.

It not being a judicial or *quasi* judicial act, we are with-

out jurisdiction. We must, therefore, decline to pass upon the constitutional questions sought to be raised.

The writ will be denied.

RUDKIN, C. J., FULLERTON, CHADWICK, and MORRIS, JJ., concur.